**WICK BUILDING COMPANY, Appellant, v. EVATT, Tax Commr., Appellee.**

Board of Tax Appeals.

No. 9527.    Decided May 2, 1946.

Manchester, Bennett, Powers and Ullman, Youngstown, for appellant.

Hon. Hugh S. Jenkins, Attorney General, and Joseph F. Ford, Assistant Attorney General, for appellee.

## ENTRY

This cause and matter came on to be heard and considered by the Board of Tax Appeals filed herein by the Wick Building Company, Youngstown, Ohio, from a final order of the tax commissioner in denying an application for review and correction of a certification of an increase of $82,182.00 in the valuation of the issued and outstanding shares of stock of the appellant company for the year 1942, resulting in an increase of $82.18 in the amount of corporation franchise tax against the appellant for said year. This cause was heard and submitted to the Board on a transcript of the proceedings of the tax commissioner, upon a stipulation of facts and briefs of counsel. The stipulation of facts filed herein reads as follows:

"Wick Building Company, Appellant, and C. Emory Glander, Appellee, under authority of Rule No. 12 of the Board of Tax Appeals, hereby stipulate that the following statements, for the purposes of this action, may be considered as though proven to be true to the extent that they are relevant and competent, reserving, however, to each party the right to object to any stipulation on the grounds of relevancy and competency and further reserving to each party the right to offer such further evidence as may be deemed competent.

"2. During the year 1942, the Appellant owned certain lands and buildings in the City of Youngstown which were used for business and commercial purposes. Said lands and buildings were at all times since their acquisition carried on Appellant's books at values representing the cost thereof to Appellant, plus the actual cost of additions and improvements thereto and less an annual depreciation charge on improvements of 2% actually written off.

"4. The amounts of appellant's capital surplus, earned or unearned, undivided profits, reserves and depreciation rates, as contained in said annual report, were identical with the amounts of the corresponding items as contained in Appellant's books.

"5. After the filing of said report, the Tax Commissioner of Ohio computed the value of Appellant's issued and outstanding shares of stock for said year, as the total value shown by the books of Appellant of its capital surplus, undivided

profits and reserves, exclusive of depreciation and taxes due and payable during said year, as reported in its said annual report, and computed the tax base thereon according to the formula set forth in §5498 GC, and certified said base for assessment, to the Auditor of State, which assessment was made and duly paid by Appellant.

"6. After the aforesaid calculation of tax basis and after assessment of the fee provided for thereon in §5499 GC and the payment of said fee by Appellant for said year, the Tax Commissioner made a redetermination of the value of the Appellant's issued and outstanding shares of stock for said year. The value of Appellant's issued and outstanding stock as so redetermined for said year was not the total value as shown by Appellant's books and as reported in Appellant's annual report of Appellant's capital surplus, undivided profits and reserves (exclusive of certain items specifically required by §5498 GC, to be excluded), in the following respects, to wit: That the Tax Commissioner increased the value of Appellant's issued and outstanding shares of stock as shown by Appellant's books and as reported by Appellant's annual report by an amount equal to the excess of value of Appellant's real estate and buildings as assessed by the Auditor of Mahoning County for real estate taxes under §5560 and the following sections of the General Code of Ohio, over the value of said real estate and buildings as shown by Appellant's books.

"7. The excess of the value of Appellant's issued and outstanding shares as so redetermined by the Tax Commissioner over the value thereof as shown by Appellant's books is $82,182.00 and said amount so added is the net difference between the value of all real estate (lands and buildings) of said Company as shown by its books and the county tax valuation.

"9. The real estate involved is Youngstown City Lot No. 342, located at the corner of Phelps & Federal Streets, Youngstown, Ohio, which was acquired about 1908, and on which a brick building, used as a bank and office building, was completed in 1910; and Youngstown City Lot No. 391, located at the corner of Champion and Federal Streets, Youngstown, Ohio, which was acquired in 1922, and on which there is a brick building, formerly used as a theatre and later converted to a store building.

"10. The cost of said premises, as entered on the company's books, and as allocated to land and buildings, is:

|  | Lot 342 | Lot 391 | Total Both Lots |
|---|---|---|---|
| Land | $145,000.00 | $178,553.00 | $323,553.00 |
| Buildings | 343,169.30 | 189,311.29 | 532,480.59 |
| Total Cost | $488,169.30 | $367,864.29 | $856,033.59 |

"11. Reserves for depreciation are shown on the company's books, computed on the basis of 2% of the cost of the buildings from March 1, 1913, as to Lot 342, and from the date of acquisition in 1922, as to Lot 391, i. e. at $6,863.38 per year as to Lot 342, and $3,786.23 per year as to Lot 391.

"12. The cost of buildings, the reserves for depreciation, the net carrying value of buildings, the cost of lands, and total value of real estate as shown by the company's books as of 1/1/42 are as follows:

|  | Lot 342 | Lot 391 | Total |
|---|---|---|---|
| Cost of Buildings | $343,169.30 | $189,311.29 | $532,480.59 |
| Reserves for Depreciation | 197,894.24 | 71,101.78 | 268,996.02 |
| Net carrying Value of Buildings | $145,275.06 | $118,209.51 | $263,484.57 |
| Cost of Lands | 145,000.00 | 178,553.00 | 323,553.00 |
| Total Value of Real Estate | $290,275.06 | $296,762.51 | $587,037.57 |

"13. The assesed value of said real estate as determined pursuant to §5560 GC, and as shown by the tax duplicates of Mahoning County as of 1/1/42, are as follows:

|  | Lot 342 | Lot 391 | Total |
|---|---|---|---|
| Land | $210,600.00 | $ 81,540.00 | $292,140.00 |
| Buildings | 315,310.00 | 61,770.00 | 377,080.00 |
| Total | $525,910.00 | $143,310.00 | $669,220.00" |

As indicated by the facts set out in the stipulation, above quoted, the increase in the taxable value of the issued and outstanding shares of stock of the appellant company in the amount of $82,182., as above stated, was effected by the tax commissioner on audit of the company's franchise tax report for said year, by increasing the net book value of appellant's real estate (land and buildings) by said amount of $82,182. In this connection it is noted that the appellant carried its buildings on its books at a cost of $532,480.59. Against this cost the appellant set up a depreciation reserve for its build-

ings in the amount of $268,996.02, resulting in a net valuation of the buildings as carried on the books of the company, of $263,484.57. The land on which these buildings were located was carried by the company at a book value of $323,553. It further appears that for the tax year 1942 the valuation of such land and buildings on the tax list and duplicate of Mahoning County, Ohio, was: Land $292,140.; Buildings $377,080.

The tax commissioner on audit of appellant's franchise tax report for said year, disallowed a part of the depreciation reserve set up by the appellant against the cost of said buildings; and of the total amount of depreciation reserve thus set up, the tax commissioner disallowed and deducted from such reserve the amount of $113,595, which was and is the amount by which the assessed value of the buildings exceeded the net valuation of the buildings as indicated by the company's books. Against this sum of $113,595. the tax commissioner set off the sum of $31,413., which was and is the amount by which the value of the appellant's land, as carried on its books, exceeded the assessed valuation thereof for said year. The difference between the $113,595. and $31,413. is $82,182.; and this is the amount in and by which the tax commissioner increased the net book value of the appellant's real estate (land and buildings) by the actions above noted.

The questions here arising require a consideration of the provisions of §5498 GC; which section reads in part as follows:

"* * * For the purpose of this act, the value of the issued and outstanding shares of stock of any such corporation shall be deemed to be the total value, as shown by the books of the company of its capital, surplus, whether earned or unearned, undivided profits, and reserves, but exclusive of (a) proper and reasonable reserves for depreciation, and depletion as determined by the tax commission (commissioner), * * * and (d) such further amount as upon satisfactory proof furnished by the corporation, the tax commission may find to represent the amount, if any, by which the value of the assets (other than good will) of the corporation as carried on its books exceeds the fair value thereof. Claim for the deduction of such difference must be made by the corporation at the time of filing its report. * ** *"

Obviously the action of the tax commissioner in disallowing and deducting the sum of $113,595. from the whole amount of the buildings depreciation reserve, had the effect of rais-

ing the net book value of the buildings to the assessed valuation thereof; and in substance and effect this action of the tax commisioner was the same as if he had substituted the assessed valuation of the buildings of the appellant for the book value thereof for the purpose of determining the value of the issued and outstanding shares of stock of the company. Although under the provisions of §5498 GC, the tax commissioner was authorized to determine on all the evidence and information available to him whether the building reserve set up by the appellant was reasonable, and to disallow and deduct such part thereof, if any, which he determined to be unreasonable in amount, he did not, in our opinion, have any authority under this section to take such action as in legal effect amounted to a substitution of the assessed valuation of these buildings in place of a determined book valuation thereof. And in this respect we find that the action of the tax commissioner was erroneous. Again the action of the tax commissioner in deducting from the value of the land, as the same was carried on the books of the company, said sum of $31,413—which was the amount by which such book value exceeded the assessed value of the land—, had the effect of reducing such book value to the assessed value of the land for the purpose of obtaining the fair value thereof in determining the valuation of the issued and outstanding shares of stock of the appellant company. As to this, we are of the view that in the absence of an application by the taxpayer for such deduction, the tax commissioner had no authority to make the same. And in this respect the tax commissioner erred.

It is, therefore, by the Board of Tax Appeals considered and ordered that the order of the tax commissioner complained of in this appeal be reversed. And inasmuch as it does not appear that the tax commissioner made any effort to determine whether the building depreciation reserve set up by the appellant was reasonable on the consideration of all the evidence and information in the case, or as to the part of such depreciation reserve, if any, which was unreasonable, and since the Board on the meager facts in the record of this case is unable to make any determination as to the reasonableness of such building depreciation reserve, it is by the Board of Tax Appeals further considered and ordered that this case be remanded to the tax commissioner for further proceedings not inconsistent with this order and entry.